IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CEDRICK J. GRAHAM, #B87484 | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | Case No. 3:21-cv-00340-SMY |
| | ) | |
| GANNON RICHELMON, | ) | |
| SERGEANT BRUMLEY, | ) | |
| JOHN DOE 1, *Segregation Lieutenant*, | ) | |
| JOHN DOE 2, *Gallery Officer*, | ) | |
| JOHN DOE 3, *Tactical Team Member*, | ) | |
| JOHN DOE 4, *Tactical Team Member*, | ) | |
| JOHN DOE 5, *Tactical Team Member*, | ) | |
| JANE DOE 1, *Nurse*, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| MAJOR BOCHOUTUS, | ) | |
| MAT PAGE, | ) | |
| JOHN/JANE DOE 6, *Warden*, | ) | |
| JOHN DOE 7, *IDOC Director*, | ) | |
| JOHN DOES 8-12, *Adjustment Committee*, | ) | |
| COUNSELOR TEASE, | ) | |
| MEDICAL STAFF, | ) | |
| CORRECTIONAL OFFICERS, | ) | |
| MENARD EMPLOYEES, and | ) | |
| ANTHONY WILLS *(official capacity)*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Cedrick J. Graham, an inmate of the Illinois Department of Corrections ("IDOC")

currently incarcerated at Hill Correctional Center ("Hill"), filed the instant lawsuit pursuant to 42

U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center

("Menard").  This case is now before the Court for preliminary review of the Complaint under

28 U.S.C. § 1915A.  Any portion of the Complaint that is legally frivolous, malicious, fails to state

a claim for relief, or requests money damages from an immune defendant must be dismissed.

28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1):  Plaintiff requested to be moved from Joshua Hodges, a seriously mentally ill inmate, who threatened and harassed him. Plaintiff's complaints infuriated Hodges and he made a false PREA claim.  Plaintiff was notified about the PREA claim on May 10, 2019 and was escorted to North 2 segregation cell #4-48 on investigative status (instead of receiving segregation).  He was released from segregation on May 23, 2019 and placed back in receiving.

While in segregation on May 14, 2019, Plaintiff was experiencing flu-like symptoms and requested medical assistance from John Doe 2 (gallery officer).  John Doe 2 stated Plaintiff did not appear ill and kept walking.  Later John Doe 2 stopped at Plaintiff's cell and saw him lying on the floor vomiting.  John Doe 2 stated, "geez you are sick" and left.  Moments later, John Doe 2 returned with Sergeant Brumley, instructed Plaintiff to drink some water, and left again.  Later, Plaintiff vomited so much he began dry heaving.  John Doe 2 walked by the cell and could hear and see Plaintiff in need of medical care.  Plaintiff begged John Doe 2 to please help him but he kept walking.  Other inmates in the area that could hear Plaintiff vomiting and dry heaving  yelled for help.  Plaintiff eventually passed out from exhaustion.

Shortly thereafter, Sergeant Brumley and John Doe 2 observed Plaintiff unconscious on the cell floor.  They ordered a tactical team to remove him, even though he was unconscious and showed zero signs of aggression or threat.  Plaintiff was awakened by the extreme aggressive behavior of John Does 3-5 (tactical team members), who repeatedly punched, kicked, and stomped Plaintiff.  During the assault, one of John Does 3-5 stated "don't hit him in the face that's how we got in trouble last time."  John Doe 1, John Doe 2, and Sergeant Brumley did not intervene to

prevent the assault by John Does 3-5.  Plaintiff believes that one of them also kicked and struck him.  Plaintiff was dragged from the cell through the gallery and up a flight of stairs while being stomped and kicked by John Does 3-5.  He believes John Doe 2 also kicked and struck him. At no time did Plaintiff display aggression, combative behavior, or resistance.  He did not threaten any correctional officers.

Plaintiff was tossed into the segregation bullpen in North 2 cellhouse.  Sergeant Brumley stated "I don't think you're sick…do you like what you got for making me have to work…I could have killed you for interrupting my day."  Nurse Jane Doe 1 was standing next to Sergeant Brumley when he made this statement.  Plaintiff told Sergeant Brumley, John Doe 1, and Jane Doe 1 that he had been vomiting and having sharp pains.  John Doe 1 (the segregation cell house lieutenant) stated "oh you got a little tummy ache now you're going to get up and walk your ass back to your cell."  Nurse Jane Doe 1 did not assess Plaintiff or intervene.

Plaintiff was then removed from the bullpen by John Does 3-5 and roughly escorted back to his cell by John Does 2-5.  He was tossed back into the vomit ridden cell and shoved so aggressively he slipped on the vomit, further exacerbating his injuries from the assault.  He suffered injuries to his shoulder, back, torso, wrist, arms, and legs.  The restraints were so tight he lost feeling in his arms and hand.  He was denied medical care by John Does 1-5 and Sergeant Brumley.  Plaintiff continues to suffer from physical and mental pain due to the assault.  He has persistent pain in his back, knee, ankles, and neck and suffers from post-traumatic stress.

Later on May 14, 2019, Plaintiff submitted a sick call request for flu-like symptoms and the injuries from the assault, but did not receive a response.  He also submitted sick call request slips on May 17, 18, and 19, 2019 seeking medical care for his original claim of illness and for the injuries from the assault.  He never received a response to the request slips and was not provided

medical care.

Plaintiff was served with a disciplinary ticket on May 15, 2019 for disobeying a direct order essential to safety and security for refusing to be restrained.  Correctional Officer Richelmon wrote the false disciplinary ticket.  In the report, C/O Richelmon stated Plaintiff was evaluated by medical staff and told them that he played hurt to get to see the nurse.  C/O Richelmon issued the ticket in retaliation for Plaintiff complaining of severe pain.  The shift supervisor, Mat Page, conducted the shift review of the disciplinary report and directed Plaintiff's placement in temporary confinement.  Major Bochoutus also reviewed the disciplinary report and concurred in the temporary confinement.  Sergeant Brumley and John Doe 1 violated Plaintiff's First amendment right by attempting to use their position of authority and intimidate him with a false disciplinary ticket to stop him from filing a grievance.

Plaintiff filed a grievance on staff conduct and the disciplinary report on May 17, 2019, but did not receive a response.  He filed another grievance on May 19, 2019 on denial of medical treatment and staff conduct, but did not receive a response.  He wrote a letter to Warden John/Jane Doe 1 on May 20, 2019 regarding his confinement in segregation, the assault, and the denial of medical care, but did not receive a response.

Plaintiff went before the Adjustment Committee, John Does 8-12, on May 22, 2019.  He made a statement, produced relevant documents, and requested that the inmates housed near the incident be interviewed.  John Doe 8 told Plaintiff to leave the disciplinary hearing.  After the hearing, Plaintiff did not receive a statement as to the findings or disposition.  On July 22, 2019, Plaintiff found out he had been disciplined and found guilty from a grade promotion notification.  Warden John/Jane Doe 6 did not provide him a hearing investigator as is required for a major infraction and he was not informed of his right to appeal.

4

Plaintiff sent requests to Counselor Tease on May 24, May 29, June 19, June 26, June 28, 2019 about his grievances but did not receive any responses. He filed a grievance on July 12, 2019 on staff conduct and the false IDR ticket that was given to him to cover up staff misconduct and the denial of medical care that occurred on May 14, 2019 but did not get a response. The same day, he sent a letter and grievance to IDOC Director John Doe 7 but did not receive a response. He submitted additional requests to Counselor Tease on July 31 and August 7, 2019 about not receiving responses to his grievances but did not receive a response. He filed a grievance on September 6, 2019 on Counselor Teas regarding staff conduct and practices of IDOC grievance process and request slip response policies but did not receive a response. The same day, he sent another letter to IDOC Director John Doe 7 asking him to please check on the issues raised in his grievances but did not receive a response.

Plaintiff asked Counselor Tease about the requests slips he had sent her and the grievances he had filed. In response, she stated, "Mr. Graham do you like Pontiac because that's where I'll send your ass to Pontiac…keep poking the hornets nest mother fucker I'll make sure you do the hardest time possible. I will make sure your time is pure hell, try me." About a week later, Plaintiff was threatened by Counselor Tease and John Doe 1. Plaintiff asked about his grievances and the policies of the IDOC grievance process. Plaintiff was warned "If it's up to me or you losing my job I'd have you killed." John Doe 1 asked if Plaintiff thought he would allow Plaintiff to sue him. John Doe 1 also stated he would have all of Plaintiff's grievances shut down to prevent exhaustion so Plaintiff's lawsuit would be dismissed.

Plaintiff was transferred to Hill on September 18, 2019 in retaliation for his grievances. He filed a grievance at Hill on October 3, 2019 regard the Menard incidents and received a response to forward the grievance to the ARB. He forwarded the grievance to the ARB on October

10, 2019.  He received a response from the ARB dated December 23, 2019, stating the grievance was not submitted in the time frame outlined in DR 504.  He then  sent another grievance directly to the ARB but received no response.  He wrote a letter to the ARB on January 3, 2019 but did not receive a response.

John Does 1-5 and Sergeant Brumley have repeatedly engaged in excessive force against inmates in the past.  Warden John/Jane Doe 6 and IDOC Director John Doe 7 have been placed on notice of the abusive conduct of John Does 1-5 and Sergeant Brumley by a number of complaints and grievances over many months and years but have failed to take disciplinary action against them or otherwise control their behavior.  It is the custom and practice of Warden John/Jane Doe 6, John Doe 1, Major Bochoutus, Mat Page, and Sergeant Brumley to allow correctional officers under their direct supervision, including John Does 2-5, to assault inmates, falsify and fabricate incident and disciplinary actions, intentionally take adverse actions out of retaliation, threats, intimidation and harassment, allow adverse actions of adjudgment committee resulting in loss of privileges and finding of guilty with no investigation, not responding to grievances, and denying medical care.   The constitutional violations Plaintiff suffered were caused in part by the customs, policies, and practices of Warden John/Jane Doe 6 and IDOC Director John Doe 7.

There is a custom, policy, or practice of denying medical care to segregation inmates who officers deem are faking it, which is beyond the purview and scope of their work.  Wexford and their  nurses have a constitutional duty to provide medical care.

## Preliminary Dismissals

"Medical Staff," "Correctional Officers," and "Menard Employees" are named as defendants, but making a collective claim against a group of individuals is improper.  Pursuant to Federal Rule of Civil Procedure 8, the Complaint must include a short, plain statement of the case

against each individual. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Further, to state a viable § 1983 claim, a plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"). While Plaintiff may refer to parties whose names are unknown as "John Doe" or "Jane Doe," he must still follow pleading standards and include a short, plain statement of the case against that individual. Because Plaintiff fails to state a claim against any individual by naming Medical Staff, Correctional Officers, and Menard Employees, those defendants are dismissed.

Similarly, in several instances in the Complaint, Plaintiff states he is making a claim against "certain individual defendants" without identifying the individuals. This reference also fails to state a claim against any individual defendant.

Finally, Plaintiff seeks to hold Warden John/Jane Doe 6, IDOC Director John Doe 7, and Wexford responsible for the acts and/or omissions of IDOC and Wexford employees on the theory of respondent superior or "supervisor liability." However, the doctrine of *respondeat superior* does not apply to actions filed under § 1983, and therefore, supervisors cannot be held liable for the actions of their subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). In an attempt to circumvent this prohibition, Plaintiff alleges he is bringing *respondent superior* (or vicarious liability) claims under 42 U.S.C. 1997e(e) and 1997d. Neither of these statutory provisions create a private right of action. *Price v. Brittain,* 874 F.2d 252, 263-64 (5th Cir. 1989); *McRorie v. Shimoda,* 795 F.2d 780, 783 n. 3 (9th Cir. 1986); *Neuman v. U.S.*, no. 07-cv-0362-MJR, 2008 WL 3874821, at *3 (S.D. Ill. August 19, 2008). Instead, 42 U.S.C. §§ 1997–1997j authorizes the United States Attorney General to institute civil actions for a violation

of an individual's civil rights.   Accordingly, Plaintiff's claims under § 1983 against Warden

John/Jane Doe 6, IDOC Director John Doe 7, and Wexford based on the doctrine of *respondeat*

*superior* are dismissed.

### Designation of Claims

Based on the allegations in the Complaint, the Court designates the following claims in this

*pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment excessive force and/or failure to intervene claim against John Doe 1, John Doe 2, John Does 3-5, Sergeant Brumley for the assault on Plaintiff on May 14, 2019. |
| Count 2: | Eighth and/or Fourteenth Amendment deliberate indifference to serious medical needs claim against John Doe 1, John Doe 2, Sergeant Brumley, John Does 3-5, Nurse Jane Doe 1, and Warden John/Jane Doe 6 for denying Plaintiff medical treatment for his flu-like symptoms and injuries from the May 14, 2019 assault. |
| Count 3: | Fourteenth Amendment due process claim against C/O Richelmon, Mat Page, Major Bochoutus, John Doe 1, Sergeant Brumley, John Does 8-12, and Warden John/Jane Doe 6 for the false disciplinary report and disciplinary hearings that resulted in a loss of privileges. |
| Count 4: | Fourteenth Amendment due process claim for Plaintiff's confinement in segregation on the false PREA claim. |
| Count 5: | First Amendment and statutory retaliation claim against C/O Richelmon, Mat Page, Major Bochoutus, John Doe 1, Sergeant Brumley, John Does 8-12 for the false disciplinary action in response to Plaintiff's request for medical care and allegations of assault. |
| Count 6: | First Amendment and statutory retaliation claim against Counselor Tease for denying Plaintiff the grievance process and for threatening Plaintiff in response to Plaintiff's request for medical care, allegations of assault, and filing grievances. |
| Count 7: | First Amendment and statutory retaliation claim against John Doe 1 for threatening Plaintiff in response to Plaintiff's request for medical care, allegations of assault, and filing grievances. |
| Count 8: | Eighth Amendment claim against Counselor Tease and John Doe 1 |

for verbal abuse, threats, and harassment.

Count 9:    First and/or Fourteenth Amendment due process claim against Counselor Tease, Warden John/Jane Doe 6, and IDOC Director John Doe 7 for failing to investigate Plaintiff's complaints.

Count 10:   First Amendment and statutory retaliation claim for Plaintiff's transfer to Hill Correctional Center.

Count 11:   *Monell* claim against John Doe 1, Warden John/Jane Doe 6, and IDOC Director John Doe 7 and Sergeant Brumley for the custom, practice, or policy of denying medical care to segregation inmates based on prison officials determinations that the inmate is faking symptoms.

Count 12:   *Monell* claim against John Doe 1, Warden John/Jane Doe 6, and IDOC Director John Doe 7 and Sergeant Brumley for Menard officials' practice of assaulting prisoners following staff/prisoner altercations which they have knowledge of but have not taken action to stop.

Count 13:   *Monell* claim against John Doe 1, Warden John/Jane Doe 6, and IDOC Director John Doe 7 and Sergeant Brumley for Menard Tactical Team's practice of using excessive force which they have knowledge of but have not taken action to stop.

Count 14:   Claim for violations of IDOC policies against Defendants for withholding medical treatment and not processing Plaintiff's grievances.

Count 15:   State law assault and battery claim against John Doe 1, John Doe 2, John Does 3-5, and Sergeant Brumley.

Count 16:   State law medical negligence claim against Nurse Jane Doe 1 for failing to provide Plaintiff medical care for his flu-like symptoms and the injuries from the May 14, 2019 assault and against Wexford Health Sources, Inc. for the actions and omissions of its employee.

Count 17:   State law intentional infliction of emotional distress claim against Defendants.

Count 18:   State law indemnification claim.

Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v.*

9

*Twombly*, 550 U.S. 544, 570 (2007).

## Discussion

### *Section 1983 claims*

#### Count 1

The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). "Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (internal citations and quotation marks omitted).  Plaintiff's Complaint includes sufficient allegations to proceed on the excessive force and failure to protect/intervene claim in Count 1 against John Doe 1, John Doe 2, John Does 3-5, and Sergeant Brumley.

#### Count 2

To state an Eighth Amendment claim based on the denial of medical care, a plaintiff must plead facts sufficient to show that (1) his medical condition was sufficiently serious, and (2) the defendants acted with deliberate indifference to his medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017); *see also Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996) (failure to obtain medical assistance for an inmate who has been assaulted may constitute deliberate indifference to a serious medical need).  "Deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it."  *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).  The allegations in the Complaint are sufficient to proceed on the deliberate indifference claim in Count 2 against John Doe 1, John Doe 2, Sergeant Brumley, John Does 3-5, Nurse Jane Doe 1, and Warden John/Jane Doe 6.

Because Plaintiff's claim that he was denied medical treatment specifically implicates the

protections afforded by the Eighth Amendment, there is no occasion to invoke the limited protections of due process. *Albright v. Oliver,* 510 U.S. 266, 273 (1994) ( "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim.") (plurality opinion of Rehnquist, C.J.) (internal quotations omitted). Accordingly, the claim asserted pursuant to the Fourteenth Amendment will not be allowed to proceed.

### Count 3

A false disciplinary ticket does not violate the Fourteenth Amendment if an inmate receives procedural due process in the disciplinary proceedings. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). To state a Fourteenth Amendment claim related to inmate disciplinary proceedings, a plaintiff must sufficiently allege that he was deprived of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court analyzing such a claim must consider (1) whether there was a protected interest at stake that necessitated due process protections and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Id.*

Here, Plaintiff does not allege a protected interest. He complains about loss of privileges and grade demotion – neither of which implicates a protected interest. *See Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases) (there is no protected liberty interest implicated in demotion to C-grade status or loss of commissary privileges). And, while he alleges he spent 13 days in segregation on investigative status related to the "false" PREA complaint, he does not allege he was placed in *disciplinary* segregation for any length of time as a result of the guilty

finding on the disciplinary ticket at issue.  Accordingly, Count 3 will be dismissed for failure to state a claim.

**Count 4**

Plaintiff's allegations that he spent 13 days in segregation on investigative status related to the "false" PREA complaint does not implicate a protected interest.  Both temporary confinement and investigative status have been determined to be discretionary segregation and do not implicate a liberty interest.  *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997); *Lekas v. Briley*, 405 F.3d 602, 609, 613 (7th Cir. 2005).  Additionally, Plaintiff's allegation that he was placed in North 2 segregation cell #4-48 instead of receiving segregation on investigative status fails to state a claim. There is no protected liberty interest in being celled in a particular location within a prison. *Williams v. Faulkner,* 837 F.2d 304, 309 (7th Cir. 1988).  Accordingly, Count 4 will be dismissed for failure to state a claim.

**Counts 5, 6, 7, and 10**

Prison officials are prohibited from retaliating against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012).  To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation."  *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). An act that is otherwise permissible may violate an inmate's rights if it is done for the purpose of retaliating for the inmate's filing of grievances or lawsuits. *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir.2000); *see also Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987).  "A complaint states a claim for retaliation when it sets forth a chronology of

events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

Plaintiff's allegations state viable First Amendment retaliation claims in Counts 5, 6, and 7, but not in Count 10.  There is no Defendant associated with the claim in Count 10 as Plaintiff does not identify who was responsible for the alleged retaliatory transfer to Hill.   Further, Plaintiff's claim for statutory retaliation pursuant to 42 U.S.C. §§ 1997d and 1997e(e) fails because neither of these provisions create a private right of action.  *Price v. Brittain,* 874 F.2d 252, 263-64 (5th Cir. 1989); *McRorie v. Shimoda,* 795 F.2d 780, 783 n. 3 (9th Cir. 1986); *Neuman v. U.S.*, no. 07-cv-0362-MJR, 2008 WL 3874821, at *3 (S.D. Ill. August 19, 2008).  Accordingly, Count 5 will proceed against C/O Richelmon, Mat Page, Major Bochoutus, John Doe 1, Sergeant Brumley, John Does 8-12, Count 6 will proceed against Counselor Tease, Count 7 will proceed against John Doe 1, and Count 10 will be dismissed.

### Count 8

Allegations of verbal abuse and threats are generally insufficient grounds for relief under § 1983.  *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  However, verbal harassment that causes physical or psychological pain may constitute cruel punishment under the Eighth Amendment.  *Beal*, 803 F.3d at 357-58.  Plaintiff's allegations are sufficient to proceed on the claim in Count 8 against Counselor Tease and John Doe 1.

### Count 9

"Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling

of [a prisoner's] grievances by person who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). And, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Further, the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012). Therefore, prison officials incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017); *Wilkins v. Illinois Dep't of Corr.* No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009). Thus, Plaintiff fails to state a viable claim in Count 9 against Counselor Tease, Warden John/Jane Doe 6, and IDOC Director John Doe 7 for allegedly failing to investigate and/or denying his grievances. Count 9 will therefore be dismissed.

### Counts 11-13

A *Monell* claim imposes liability against a governmental body where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). At this stage, Plaintiff's allegations are sufficient to proceed on the *Monell* claims in Counts 11-13, but some defendants must be dismissed.

Plaintiff asserts claims against John Doe 1 (segregation cell house lieutenant), Warden John/Jane Doe 6, IDOC Director John Doe 7, and Sergeant Brumley.  However, the *Monell* claims are not properly brought against prison officials in their individual capacities and should be directed at a governmental entity.  That said, the claims in Counts 11-13 will be allowed to proceed against Warden John/Jane Doe 6 and IDOC Director John Doe 7 in their official capacities only because they are effectively claims against Menard Correctional Center and IDOC.  The claims against Warden John/Jane Doe 6 and IDOC Director John Doe 7 in their individual capacities and the claims against Defendants John Doe 1 and Sergeant Brumley are dismissed from Counts 11-13.

### Count 14

Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or ... departmental regulations and police practices."  *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003); *see also Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill.App.Ct. 2000) (prison regulations were "never intended to confer rights on inmates or serve as a basis for constitutional claims").  As such, Plaintiff cannot use § 1983 to enforce IDOC regulations and policies.  *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010).  Nor can he assert a liberty interest arising from IDOC policies and/or procedures. *James v. Pfister*, 708 F. App'x 876, 879–80 (7th Cir. 2017).  Therefore, Count 14 will be dismissed.

### *State law claims*

This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th

Cir. 2008).  Because Plaintiff's state law claims arise from the same facts as his federal claims, the Court will assess the merits of those claims.

### Count 15

Plaintiff's assault and battery claim under Illinois state law, based on the same factual allegations as Count 1, will be allowed to proceed against John Doe 1, John Doe 2, John Does 3-5, and Sergeant Brumley.  *See Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547-48 (7th Cir. 2018) (discussing assault and battery under Illinois law).

### Count 16

Plaintiff seeks to bring a state law medical negligence claim against Nurse Jane Doe 1.  An Illinois negligence claim for personal injuries requires the plaintiff to demonstrate the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.[1]  *Iseberg v. Gross*, 879 N.E.2d 278 (2007).  In Illinois, there is a duty to provide inmates with reasonable medical care.  *See West v. State of Illinois*, 67 Ill. Ct. Cl. 147 (2014) (citing *Dye v. State*, 48 Ill. Ct. Cl. 452, 455 (1995)).  Plaintiff's allegations are sufficient to proceed on a medical negligence claim against Nurse Jane Doe 1 and Wexford as her employer.[2]

### Count 17

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant either intended to inflict severe emotional distress or knew there was a high probability that their

---

[1] The Court notes that Plaintiff has not provided the affidavit and medical report required under Illinois state law, *i.e.*, 735 ILCS § 5/2-622. If he intends to proceed with this claim, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). His failure to do so is not dispositive of his claim at this point. *Id.* However, Plaintiff must comply with the requirements set forth in 735 ILCS § 5/2-622 before summary judgment on the merits of the case.

[2] R*espondeat superior* liability is recognized under Illinois state law.

conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress.  *McGreal v. Village Orland Park*, 850 F.3d 308 (7th Cir. 2017).

Plaintiff asserts an intentional infliction of emotional distress claim against all Defendants. For this claim, he relies on all of the allegations in the Complaint and states "the acts and conduct of the named defendants, corporate, and certain unknown and known individual defendants as set forth above were extreme and outrageous."  These overly broad and conclusory allegations are insufficient to state a claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements").  As such, Count 17 will be dismissed.

### Count 18

Plaintiff seeks to bring a claim for indemnification under Illinois state law against Wexford, Warden John/Jane Doe 6, and IDOC Director John Doe 7.  Plaintiff appears to be relying on the Illinois State Employee Indemnification Act, 5 ILCS 350/1, et seq., under which the State is obligated to indemnify "any State employee" in civil actions against the employee for "act[s] or omission[s] occurring within the scope of the employee's State employment" and the Attorney General is to appear on the employee's behalf.  5 ILCS 350/2(a) and (e)(ii).  Plaintiff cannot bring this claim against the State of Illinois in this context as the Illinois State Employee Indemnification Act does not expressly create a private cause of action.  Moreover, the Eleventh Amendment bars federal courts from exercising jurisdiction over "actions against a state brought by her own citizens," unless the state consents to suit. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992) (citations omitted). The fact that a state chooses to indemnify its employees for damages does not constitute consent. *Jones v. Linn*, 2020 WL 7342694, at *7 (S.D. Ill. Dec. 14, 2020).  Accordingly, Count 18 will be dismissed.

## Request for Injunctive Relief

Plaintiff requests injunctive relief in the form of expungement of his disciplinary conviction. This request is associated with the Fourteenth Amendment due process claim in Count 3 that is being dismissed. Therefore, the request for injunctive relief will also be dismissed.

## Official capacity claims

Plaintiff asserts claims against each defendant in his or her individual and official capacities. Because the only claim for injunctive relief has been dismissed, Plaintiff is proceeding only on claims with requests for monetary damages. When a plaintiff seeks monetary damages against a state official, he must bring the suit against them in his or her individual capacity. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). And, because a state official sued in his official capacity is not a "person" within the meaning of section 1983, an official capacity claim against an individual is really a suite for money damages against the State, which is barred by the Eleventh Amendment and the doctrine of sovereign immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000). The only exception is the *Monell* claims in Counts 11-13, which are proceeding against Warden John/Jane Doe 6 and IDOC Director John Doe 7 in their official capacities. Accordingly, Plaintiff's claims against all other Defendants in their official capacities are dismissed without prejudice.

## Identification of Doe Defendants

The current Warden of Menard Correctional Center, Anthony Wills, in his official capacity, will be added to the docket for purposes of responding to discovery aimed at identifying the Doe defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009); Fed. R. Civ. P. 21. Guidelines for discovery will be set by the undersigned judge. **Once the names of**

the Doe defendants are discovered, Plaintiff shall file a motion to substitute the newly identified defendants for the Doe defendants.

### Disposition

The following claims will proceed:  Count 1 against John Doe 1, John Doe 2, John Does 3-5, and Sergeant Brumley; Count 2 against John Doe 1, John Doe 2, Sergeant Brumley, John Does 3-5, Nurse Jane Doe 1, and Warden John/Jane Doe 6; Count 5 against Gannon Richelmon, Mat Page, Major Bochoutus, John Doe 1, Sergeant Brumley, John Does 8-12; Count 6 against Counselor Tease; Count 7 against John Doe 1; Count 8 against Counselor Tease and John Doe 1; Counts 11-13 against Warden John/Jane Doe 6 and IDOC Director John Doe 7 in their official capacities; Count 15 against John Doe 1, John Doe 2, John Does 3-5, and Sergeant Brumley; and Count 16 against Nurse Jane Doe 1 and Wexford Health Sources, Inc.

The following claims are **DISMISSED without prejudice**:  Counts 3, 4, 9, 10, 14, 17, and 18; Counts 11-13 against Warden John/Jane Doe 6 and IDOC Director John Doe 7 in their individual capacities and John Doe 1 and Sergeant Brumley; official capacity claims against all Defendants except Warden John/Jane Doe 6 and IDOC Director John Doe 7; and the claim for injunctive relief.  Additionally, Defendants Medical Staff, Correctional Officers, and Menard Employees are **DISMISSED without prejudice** and the Clerk of Court is **DIRECTED** to **TERMINATE** them as defendants.

The Clerk of Court is **DIRECTED** to add Anthony Wills, in his official capacity as the current Warden of Menard Correctional Center to the docket for purposes of responding to discovery aimed at identifying the unknown defendants.

The Clerk shall prepare for Gannon Richelmon, Mat Page, Major Bochoutus, Sergeant Brumley, Counselor Tease, Wexford Health Sources, Inc., Anthony Wills (official capacity), and,

19

once identified, John Doe 1, John Doe 2, John Does 3-5, John/Jane Doe 6 (official and individual capacities), John Doe 7 (official capacity only), John Does 8-12, and Jane Doe 1: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  June 17, 2021**

_s/ Staci M. Yandle_____
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.