IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CEDRICK J. GRAHAM, #B-87484,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-0340-SMY-GCS |
| | ) |
| **GANNON RICHELMON, et al.,** | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**Yandle, District Judge**:

Pending before the Court is Defendants Marvin Bochantin, Timothy Brumley, Jason Hart, Frank Lawrence, Kevin Page, Aaron Priddy, Gannon Richelman, Joshua Schoenbeck, and Morgan Teas' Partial Motion for Summary Judgment (Doc. 161). Plaintiff responded in opposition (Doc. 174), and Defendants replied (Doc. 184). For the following reasons, the Motion is **GRANTED in part and DENIED in part**.

### Procedural Background

Plaintiff Cedrick Graham, currently an inmate at Lawrence Correctional Center, filed this lawsuit pursuant to 42 U.S.C. § 1983, claiming that various Illinois Department of Corrections ("IDOC") employees violated his constitutional rights. The Court screened Graham's Complaint pursuant to 28 U.S.C. § 1915A (Doc. 10), finding that Graham articulated the following colorable claims:

> **Count 1:** Eighth Amendment excessive force and or failure to intervene claim against Defendants Brumley, Freeman, Harmon, Priddy, and Major for the assault on Plaintiff on May 14, 2019.

**Count 2:** Eighth and/or Fourteenth Amendment deliberate indifference to serious medical needs claim against Defendants Brumley, Freeman, Harmon, Lawrence, Priddy, and Major for denying Plaintiff medical treatment for his flu-like symptoms and injuries from the May 14, 2019 assault.

**Count 5:** First Amendment and statutory retaliation claim against Defendants Bochantin, Brumley, Hart, Page, Priddy, Richelman, and Schoenbeck for the false disciplinary action in response to Plaintiff's request for medical care and allegations of assault.

**Count 6:** First Amendment and statutory retaliation claim against Defendant Teas for denying Plaintiff the grievance process and for threatening Plaintiff in response to Plaintiff's request for medical care, allegations of assault, and filing grievances.

**Count 15:** State law assault and battery claim against Defendants Brumley, Freeman, Harmon, Priddy, and Major.

**Count 16:** State law medical negligence claim against Nurse Jane Doe 1 for failing to provide Plaintiff medical care for his flu-like symptoms and the injuries from the May 14, 2019 assault and against Wexford Health Sources, Inc. for the actions and omissions of its employee.

Defendant Lawrence now seeks summary judgment on Count 2; Defendants Bochantin, Brumley, Hart, Page, Priddy, Richelman, and Schoenbeck move for summary judgment on Count 5; Defendant Teas seeks summary judgment on Count 6; and all defendants contend they are entitled to qualified immunity.

**Facts**

The following facts are derived from Plaintiff's deposition, are undisputed unless otherwise indicated, and are taken in the light most favorable to Graham: Graham has been in IDOC custody since 2019. The events that form the basis of this lawsuit began on May 14, 2019, while Graham was incarcerated at Menard Correctional Center (Doc. 162-1 at pp. 14, 16, 27). On that day, at approximately 2:00 p.m., Graham began experiencing illness in his cell (*Id*. at pp. 28–29). About one hour later, Graham told Defendant Richelman, a gallery officer, of sharp pains in his chest and stomach (*Id*. at pp. 29–30). Defendant Richelman observed Graham

did not appear ill and subsequent left (*Id*., p. 30).  Graham started vomiting and called for help. (*Id*. at pp. 30).  Defendant Richelman returned with Sergeant Brumley, who advised Graham to drink water and then left.  (*Id*., p. 34).  Graham continued to vomit and eventually passed out. (*Id*., p. 35).

Subsequently, when Graham was found unconscious, Defendants Richelman, Brumley, Harmon, Major, Freeman, and Priddy arrived at his cell.  Graham regained consciousness to punches and kicks, finding himself laying on his stomach on the ground with his hand cuffed. (*Id*. at pp. 39, 45–46).  The assault continued, and because Graham was unable to walk on his own, he was dragged to the infirmary.  (*Id*. at pp. 44–54).  There, a nurse told him "[you] should have just put in a kite"[1] and did not assess him.  (*Id*., p. 60).  Graham walked back to his cell, escorted by correctional officers.  (*Id*., pp. 67–69).

Later that day, Graham submitted a request slip for medical attention regarding the injuries from the assault, but did not receive a response.  He also submitted request slips on May 17 and 19, 2019, seeking medical care for his original claim of illness and for the injuries from the assault.  He was not provided medical care until his transfer to Hill Correctional Center.[2]  (*Id*. at pp. 74–75).

On May 15, 2019, Graham received a disciplinary ticket for disobeying a direct order. (*Id*., p. 80).  Defendant Richelman drafted the disciplinary ticket, in which he stated Graham refused to "step to the bar front to be restrained" and "was evaluated by medical staff and stated that he played hurt to get to see the nurse and put on sick-call."  (Doc. 162-2).  Defendants Bochantin and Page approved it and directed Graham's placement in temporary confinement.

---

[1] "Kite" is a slang term for a prison letter.  *United States v. Lewis*, 660 F.App'x 396, 409 (6th Cir. 2016).

[2] Graham sought grievances for his lower back MRI, which was approved.  (Doc. 162-1, p. 78).

(*Id.*).  According to Graham, Defendants issued this "fabricated" disciplinary ticket in retaliation for his request for medical care and allegations of assault.  (Doc. 178, p. 34).

On May 17, May 19, and July 12, 2019, Graham filed a grievance on staff conduct and the disciplinary ticket but did not receive responses.  (Doc. 178-3, pp. 4–7; Doc. 162-1, p. 93).  Graham sent requests to his counselor, Defendant Teas, on various dates about the status of his grievances but to no avail.[3]  (*Id.*, pp. 92–93).  On September 6, Graham filed a grievance on Defendant Teas regarding the staff conduct and the practices of IDOC grievance process, and requested slip response policies, but did not receive a response.  (*Id.*, p. 94; Doc. 178-3, pp. 17–18).  On one occasion, Graham asked Defendant Teas about the requests and grievances when she came on the gallery.  In response, Defendant Teas threatened to transfer him to a different correctional center and would make his life miserable.  (*Id.*, p. 95).

On May 21, 2019, the Menard Adjustment Committee held a hearing on Graham's disciplinary ticket.  (Doc. 162-4).  Defendants Hart and Schoenbeck comprised the committee. (*Id.*).  Graham pleaded not guilty and was not permitted to make a statement at the hearing or allowed to introduce witnesses in his defense.  (*Id.*).  Following the hearing, the Adjustment Committee found Graham guilty and issued a punishment consisting of one month of "C Grade" and a one-month commissary restriction (Doc. 162-4).  Graham wrote letters to Warden Lawrence on May 15 and May 20, 2019, about his confinement, the assault, and the denial of medical care, but received no responses.  (Doc. 162-1, p. 106; Doc. 178-2, p. 61; Doc. 178-3, p.36).

---

[3] Graham sent requests on May 24, May 29, June 19, June 26, July 12, July 31, and August 7, 2019.  (Doc. 162-2, pp. 93–94).

### Discussion

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party must identify specific facts in the record showing that genuine issues of material fact exist precluding summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the court "…must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Finantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

### Count 2 - Deliberate Indifference Against Defendant Lawrence

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate proceeding on a claim of deliberate indifference to medical needs must offer evidence that he suffered from an objectively serious medical condition, and that the defendant knew of and disregarded a substantial risk of harm. *Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 915 (7th Cir. 2020).

Defendant Lawrence did not dispute the fact that Graham suffered from a serious medical condition. The question is whether there is evidence that Lawrence knew of but disregarded the risks associated with Graham's condition. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Graham presents evidence that he wrote letters to Lawrence on May 15, 2019 and May 20, 2019. (Doc. 178-2, p. 61; Doc. 178-3, p.36). In both letters, Graham requested medical treatment for

his flu-like symptoms and reported assault by other prison officials. The content of the letters was sufficient to alert Lawrence that Graham's medical condition was not being observed and supports a reasonable conclusion that Lawrence's inaction constituted deliberate indifference. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). As such, Defendant Lawrence is not entitled to summary judgment on Count 2. To the extent Graham contends Lawrence should have a better control over his prison and is liable as a supervisor, that claim is barred as the doctrine of respondeat superior does not impose supervisor liability in § 1983 actions.

### Count 5 - Retaliation Against Defendants Bochantin, Brumley, Hart, Page, Priddy, Richelman, and Schoenbeck

These Defendants argue they are entitled to summary judgment as to Graham's retaliation claim in Count 5 because Graham's First Amendment activity was not the reason for the alleged retaliation. To prevail on a First Amendment retaliation claim, a plaintiff must show "that he engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). A plaintiff "must present something by which a jury could connect the dots between" the protected activity and the adverse treatment to make his prima facie showing of causation. *Roger Whitmore's Auto Services, Inc. v. Lake County, Ill.*, 424 F.3d 659, 669 (7th Cir. 2005). If the plaintiff makes the prima facie showing, the burden shifts to the defendant to rebut the causal inference raised by Plaintiff's evidence. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). Here, Graham alleges that Defendants issued him a disciplinary ticket because he requested medical attention and reported an assault.

Defendant Richelman wrote in the disciplinary ticket that a nurse examined Graham and he feigned injuries to seek medical attention. Thus, Defendants contend the ticket was issued due to Graham's failure to respond to direct orders. However, Graham maintains that he had an actual illness and his request for medical attention was the motive for the issuance of the disciplinary ticket. A reasonable jury could believe Graham's account and "connect the dots" between his medical request and the issuance of the disciplinary ticket. Moreover, contrary to Defendants' argument that the punishment for the disciplinary ticket is not a deprivation that would deter a person of ordinary firmness, a reasonable jury could find that a one-month C grade and one month of commissary restriction are sufficiently harsh deprivations to deter future First Amendment activity. *See Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989) (this element of proof is judged by an objective standard). Therefore, Defendant Richelman is not entitled to summary judgment on Count 5.

Graham also alleges retaliation against Defendants Bochantin and Page, who reviewed and approved the disciplinary ticket, and Defendants Hart and Schoenbeck, who served on the Adjustment Committee for the disciplinary proceeding.[4] While Graham asserts these defendants collectively "falsified ticket in attempts to cover up for the Defendants failure, assaults to plaintiff, and done in retaliation to plaintiff" (Doc. 178, p. 11), none of them, including Defendants Brumley and Priddy who were also named, were personally involved in issuing the disciplinary ticket against Graham. *See Whitfield v. Spiller*, 76 F.4th 698, 718 (7th Cir. 2023) (a First Amendment retaliation claim requires personal involvement). And there is no evidence in the record supporting Grahams claim that improper motives influenced their actions. Because

---

[4] In his response, Graham also asserts that claims Defendants Schoenbeck and Hart retaliated against him by not providing an investigator or the witnesses he requested for his disciplinary hearing. (Doc. 178, p. 45). However, this Fourteenth Amendment Due Process claim was designated by the Court on merit review (Doc. 10).

there is no evidence of a "causal connection or affirmative link between the action complained about and the official sued," Defendants Bochantin, Brumley, Hart, Page, Priddy, and Schoenbeck are entitled to summary judgment on Count 5.

### Count 6 - Retaliation Against Defendant Teas

Defendant Teas argues that there is no evidence of a causal connection between the alleged retaliation and Plaintiff's requests for medical attention, allegations of assault, filing of grievances. The Court agrees that the evidence does not support a direct link between the alleged retaliation and the medical request or assault allegations, given Teas' non-involvement in those matters. However, whether Teas retaliated against Graham by not processing his grievance requests remains a question for the jury. Graham testified that he repeatedly submitted grievances through Teas without response and when he personally inquired about his grievances, Teas threatened him, stating, "Keep poking the hornet's nest . . . I'll make sure you do the hardest time possible and I'll make sure your time's pure hell. Try me." (Doc. 162-1, p. 95). Based on this evidence a reasonable jury could conclude that Teas' actions were retaliatory. Defendant Teas is not entitled to summary judgment on Count 6.

### Qualified Immunity

Finally, Defendants argue qualified immunity shields them from any liability. "Public officials performing discretionary functions are entitled to qualified immunity from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (internal quotation marks omitted). The Supreme Court has established a two-part test to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). If so, was the law clearly established when the defendant's alleged unlawful conduct occurred? (*Id.*). The two questions may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009). As to the first prong, the Court has found that the evidence creates material issues of facts regarding Graham's deliberate indifference and First Amendment retaliation claims.

In demonstrating that the violated right was clearly established, "a plaintiff must show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Howell v. Smith,* 853 F.3d 892, 897 (7th Cir. 2017) (internal quotation marks omitted). The factual circumstances and constitutional violations alleged by Plaintiff do not invoke new constitutional principles—similar cases have been extensively litigated in district courts across the nation. As such, these violations were clearly established unlawful at the time of the occurrences in question. *See Orlowski v. Milwaukee County*, 827 F.3d 417, 422 (7th Cir. 2017) (fail to provide care for a serious medical condition is an obvious constitutional violation)*; Thomas v. Walton*, 461 F.Supp.2d 786, 798 (S.D. Ill. 2006) (defendants have clearly established rights to be free from retaliation for filing grievances and excessive force). Thus, Defendants are not entitled to summary judgment on these issues.

## Conclusion

Defendant's motion for summary judgment is **GRANTED in part and DENIED in part**. Count 2 shall proceed against Defendants Timothy Brumley, Trenton Freeman, Tyler Harmon, Frank Lawrence, Aaron Priddy, and Matthew Major. Count 5 shall proceed against

Defendant Gannon Richelman; summary judgment is granted as to Defendants Bochantin, Brumley, Hart, Page, Priddy, and Schoenbeck.  Count 6 shall proceed against Defendant Morgan Teas.  Graham's Motion for Reconsideration (Doc. 171) is **TERMINATED as MOOT**.

    **IT IS SO ORDERED.**

    **DATE: March 27, 2025**

                                                **STACI M. YANDLE**
                                                **United States District Judge**